UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Frederick Lamar Dixon, #26592-039,

        Petitioner,

v.

Eric Rardin, Warden,

        Respondent.

Case No. 25-cv-11492

Honorable Denise P. Hood

---

**Response to Petition for Writ of Habeas Corpus**

---

    For the reasons stated in the attached brief, this Court should dismiss or deny petitioner Frederick Lamar Dixon's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

                              Respectfully submitted,

                              JEROME F. GORGON JR.
                              United States Attorney

                              *s/Sarah Alsaden*
                              Sarah Alsaden
                              Assistant United States Attorney
                              211 W. Fort Street, Suite 2001
                              Detroit, MI  48226
                              (313) 226-9146
                              sarah.alsaden@usdoj.gov

Dated: August 21, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Frederick Lamar Dixon, #26592-039,

    Petitioner,

v.

Eric Rardin, Warden,

    Respondent.

Case No. 25-cv-11492

Honorable Denise P. Hood

---

**Brief in Support of Response to Petition for Writ of Habeas Corpus**

---

The Court should dismiss or deny Frederick Dixon's petition for a writ of habeas corpus under 28 U.S.C. § 2241. First, Dixon has failed to exhaust his administrative remedies. Second, the Bureau of Prisons has applied the credits that Dixon is entitled to for periods of official detention before his sentence commenced and properly excluded time that Dixon received credit for on his state sentences.

## BACKGROUND

**A. Factual History**

In 2020, Dixon was on parole for two different state cases. (Exhibit A, Fanello Decl., ¶ 14, Att. 2). Beginning in March 2020, detectives with the Michigan State Police (MSP) began investigating Dixon for distributing cocaine, crack cocaine,

2

methamphetamine, and heroin in the Washtenaw area. (*United States v. Dixon, et al.*, EDMI Case No. 21-cr-20566, ECF No. 166, PSR ¶ 14). Dixon absconded from his parole on May 27, 2020. (Exhibit A, Fanello Decl., ¶ 14, Att. 2).

In the summer of 2020, MSP learned that Dixon was planning to travel to Mississippi to purchase controlled substances and bring them back to Michigan to sell them. (*Dixon, et al.*, EDMI Case No. 21-cr-20566, ECF No. 166, PSR ¶ 14). MSP also learned that the DEA was separately investigating Dixon for the same crimes and that they had obtained the location of Dixon's cellphone. (*Id.*).

Working together, law enforcement intercepted Dixon on August 6, 2020. (*Id.*). Officers stopped Dixon on his way back from Mississippi as he entered Michigan. (*Id.* at ¶ 15). They searched Dixon's vehicle and located a fanny pack inside containing large quantities of cocaine and methamphetamine (approximate 192 grams of methamphetamine and 219 grams of cocaine). (*Id.* at ¶ 16–17). At the time, Dixon was a parole absconder and had an outstanding MDOC warrant. Because of the pandemic, however, the jails would not house him, and he was released. (*Id.*)

After his release, Dixon continued to engage in drug trafficking. On August 28, 2020, law enforcement once again stopped Dixon's vehicle and found Dixon transporting large quantities of controlled substances, including over 400 grams of methamphetamine and over 100 grams of cocaine). (*Id.* at ¶ 21). Dixon was once

again released because jails would not house him on his outstanding MDOC parole warrant. (*Id*. at ¶ 21).

After his arrest, officers continued to investigate Dixon for distribution of controlled substances. (*Id*. at ¶ 22). He was ultimately arrested on September 29, 2020, afterofficers tried to stop Dixon's vehicle while he was driving, and he fled from officers and to a nearby apartment. (*Id*.). As a result, Dixon was charged in state court with fleeing and eluding and assaulting/resisting/obstructing a police officer.

### B. Procedural History

After Dixon was finally arrested and taken into state custody, but before resolving his parole violation, he was sentenced by the 14A District Court in Ypsilanti for an outstanding 2018 charge for possession of drug paraphernalia. (Exhibit A, Fanello Decl., at ¶ 6). Dixon was sentenced to 60 days, with credit for 60 days, in the Washtenaw County Jail. (*Id.*).

Following his sentencing for the 2018 drug possession charge, he was returned to MDOC custody on November 4, 2020. (*Id.*). MDOC held a hearing on his parole violations in case numbers 07-1101-FH and 11-1701-FH on January 13, 2021, and revoked Dixon's parole. (*Id*. at ¶ 7, Att. 4). The date calculated as the maximum term of imprisonment on these state cases was January 25, 2027. (*Id*. at ¶ 7, Att. 19). On May 4, 2021, Dixon was sentenced to six months' imprisonment,

4

consecutive to his parole revocation sentence, for the September 2020 fleeing/obstructing charge. (*Id*. at ¶ 8, Att. 6).

About a year after his arrest, on September 2, 2021, a federal grand jury charged Dixon with conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(viii). (*Dixon, et al.*, EDMI Case No. 21-cr-20566, ECF No. 1). On July 16, 2024, Dixon pleaded guilty in his federal case. (*Id.,* ECF No. 125).

Dixon remained in the primary custody of the state but came into temporary federal custody pursuant to a writ of habeas corpus ad prosequendum at various points between 2021 and 2024, as summarized in the following chart:

| Date | Location |
|---|---|
| 9/21/2021 – 10/8/2021 | Federal writ |
| 10/8/2021 – 5/5/2022 | MDOC custody |
| 5/05/2022 – 2/8/2024 | Federal writ |
| 2/08/2024 – 7/12/2024 | MDOC custody |
| 7/12/2024 – 8/6/2024 | Federal writ |
| 8/06/2024 – 8/14/2024 | MDOC custody |
| **8/14/2024** | **Paroled by MDOC** |
| 8/14/2024 – 1/12/2025 | Washtenaw County Jail (serving state sentence for fleeing/assaulting charge) |
| 1/13/2025 – present | Federal custody |

(Exhibit A, Fanello Decl., ¶ 9).

On April 22, 2025, the Honorable Judith E. Levy sentenced Dixon to 38 months of imprisonment on each of the two counts of conviction, to be served concurrently—a significant downward departure from Dixon's guideline range of

5

188–235 months. (*Id.*, Judgment, ECF No. 168). The sentencing court considered and weighed heavily defense counsel's argument that Dixon would not receive any credit from the BOP for the time he had already spent in state custody. (*Id.*, Sentencing Hr'g Tr., ECF No. 174, p. 40).

## ARGUMENT

Dixon's petition should be dismissed because he failed to exhaust his administrative remedies or denied because the BOP properly credited him for all time for which he is eligible to receive credit.

**A. Dixon's petition should be dismissed because he failed to exhaust his administrative remedies.**

This Court should deny Dixon's petition because he has failed to exhaust his administrative remedies. Dixon's argument that he is prohibited from exhausting his remedies is false. No contract exists that bars Dixon from filing administrative grievances. In fact, Dixon has been using the grievance procedure system at FCI Cumberland and previously used the grievance system at FCI Milan where he was housed as a pretrial detainee. (*See* Ex. A, Fanello Decl., ¶ 18–23, Att. 23–24).

Dixon also argues he would be subjected to irreparable harm if forced to exhaust his administrative remedies because he believes he is entitled to immediate release. District courts in this Circuit have routinely rejected such arguments, finding no irreparable harm in requiring inmates to exhaust their remedies even when their requested relief would require immediate release. *See, e.g.*, *Pollock v.*

6

*Rardin*, No. 24-cv-12731, 2025 WL 1699581, at *4 (E.D. Mich. June 17, 2025) (Berg, J.) (noting that an already-passed or impending release date is often insufficient to deem exhaustion futile); *Gongora-Baltan v. Healy*, No. 24-cv-1597, 2024 WL 4993599, at *2 (N.D. Ohio Nov. 12, 2024) (similar); *DeLeo v. Paul*, No. CV 5:23-241-KKC, 2023 WL 5945868, at *2 (E.D. Ky. Aug. 22, 2023) (rejecting similar argument and collecting cases).

Dixon also has not administratively exhausted his remedies on his *nunc pro tunc* designation claim, and this Court can deny this petition on that ground. *See e.g., Bohnard v. Nagy*, No. 2:24-CV-10940, 2025 WL 475838, at *3 (E.D. Mich. Feb. 12, 2025) (Parker, J.).

**B. Dixon's petition should be denied because he has been credited for all periods of official detention before his sentence commenced.**

But the Court need not reach the exhaustion issue because there is a more fundamental problem with the merits of Dixon's petition—he has received all the credit to which he is entitled.

A federal defendant has the right to receive credit for time served in official detention before his sentence begins, if that time has not been credited against another sentence. 18 U.S.C. § 3585(b). The federal sentence of a prisoner "does not begin to run when a prisoner in state custody is produced for prosecution in federal court pursuant to the federal writ of habeas corpus *ad prosequendum*." *United States v. White*, 874 F.3d 490, 507 (6th Cir. 2017) ("When a State sends a prisoner

7

to federal authorities pursuant to such a writ, 'the prisoner is merely "on loan" to the federal authorities,' with the State retaining primary jurisdiction over the prisoner."); *Bridgeman v. Bureau of Prisons*, 112 F. App'x 411, 413 (6th Cir. 2004); *Broadwater v. Sanders*, 59 F. App'x 112, 113–14 (6th Cir. 2003). A district court does not have the authority to grant credit for time served; only the Attorney General or the Bureau of Prisons do. *See United States v. Wilson*, 503 U.S. 329, 333–34 (1992); *United States v. Crozier*, 259 F.3d 503, 520 (6th Cir. 2001).

Dixon incorrectly claims he is entitled to credit from the time of his arrest on September 29, 2020, through his sentencing date. But Dixon's request to be credited for the time between his arrest and when he was paroled would result in impermissible double counting, since the state applied that time to his sentences in his three prior state criminal cases. *See* 18 U.S.C. § 3585(b); (Ex. A, Fanello Decl., ¶ 14, Att. 19). Indeed, Dixon does not dispute that he was in primary state custody for parole violations until August 14, 2024. And although he was repeatedly brought into federal custody on a writ, he was still in primary state custody and was credited for that time on his state sentences. *White*, 874 F.3d at 507. After he was paroled, he was transferred to the custody of the Washtenaw County Sherrif to serve his sentence for fleeing/obstructing. (*See id.*, ¶¶ 8, 10–11, Att. 5, 11–12). Dixon was not brought into primary federal custody until he completed that

8

sentence on January 12, 2025. (*Id.* ¶ 11). He has received credit towards his sentence for the period beginning January 12, 2025, through the present. (*Id.* ¶ 17).

Dixon also argues that the Michigan Parole Board violated his due process rights by extending his parole through August 14, 2024. But Dixon has no constitutional right to parole. *See Broadwater*, 59 F. App'x at 113–14 (*citing Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979)). In fact, the Sixth Circuit has previously rejected arguments just like Dixon's. *See id.* (rejecting argument that 17-months defendant spent on a federal writ prevented him from being paroled from his state sentence since he had no constitutional right to parole); *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993) (rejecting argument that defendant would have been released by Tennessee earlier but for pending federal charges and crediting defendant for time in custody only after he was paroled by the state); *United States v. Avery*, 911 F.2d 734 (6th Cir. 1990) (table) ("[A] defendant's federal sentence is in no way legally affected if a state chooses to incarcerate defendant before the federal sentence has commenced to run."); *Vaughn v. United States,* 548 F.2d 631, 632–33 (6th Cir. 1977) (if state imprisonment results from an unrelated state charge, credit for time served in state custody may not be granted on federal sentence). This Court should similarly reject his same argument here.

In short, Dixon asks this Court to give him what is statutorily prohibited: double credit. *See Garrett v. Snyder*, 41 F. App'x 756, 757 (6th Cir. 2002) (defendant could not be credited for time spent in state custody prior to the imposition of his federal sentence because he received credit for that time on his state sentences); *see also Bridgeman*, 112 F. App'x at 412–13 (same); *Huffman v. Perez*, 230 F.3d 1358 (6th Cir. 2000) (table) (same); *DeJesus v. Zenk*, 374 F. App'x 245, 247 (3d Cir. 2010) (same). This Court should therefore deny his petition.

### C. The BOP did not abuse its discretion in finding Dixon ineligible for a *nunc pro tunc* designation.

Dixon alternatively argues that he is entitled to a *nunc pro tunc* designation to ensure that time lost in administrative error is not passed on to him. (Habeas Pet., ECF No. 1 at PageID.2). On May 12, 2025, Dixon filed a request with the BOP for *nunc pro tunc* designation. (ECF No. 1, PageID.24). Since then, the BOP determined that Dixon was not eligible for *nunc pro tunc* designation because he had completed his sentence on all of his state cases before he had been sentenced on his federal case, and a federal sentence of imprisonment cannot "commence earlier than the date on which it was imposed." (*See* Exhibit A, Fanello Decl., ¶ 13, Att. 23–24).

In appropriate cases, "the BOP may exercise its discretion to effectuate a state court order regarding concurrent sentencing by retroactively designating the state prison as a prisoner's place of federal confinement." *Ruff v. Butler*, No. 16-

5565, 2017 WL 5135545, at *2 (6th Cir. June 16, 2017) (citing *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1990)). This is known as a *nunc pro tunc* or *Barden* designation and it applies "when a person subject to a federal sentence is serving a state sentence." *Setser v. United States*, 566 U.S. 231, 235 (2012). The BOP has the discretion to "designate the state prison as the place of imprisonment for the federal sentence—effectively making the two sentences concurrent—or decline to do so—effectively making them consecutive." *Id.* The BOP has issued a program statement that outlines eligibility for such a designation. (Ex. B, BOP Program Statement 5160.05). The BOP must consider a request for *nunc pro tunc* designation but it is under no obligation to grant the request. *Ruff*, 2017 WL 5135545, at *2 (noting that courts cannot grant a habeas petition merely because they would weigh factors differently, the "writ may issue only where an error is fundamental and carries a serious potential for a miscarriage of justice.").

Dixon cannot use the *nunc pro tunc* designation to require the BOP to credit him for the time he spent in state custody because "[t]he earliest date a sentence can begin is the date it is imposed." *Jones v. Eichenlaub*, No. 08-CV-13624, 2010 WL 2670920, at *2 (E.D. Mich. July 1, 2010); *see also Doan v. Lamanna*, 27 F. App'x 297, 299 (6th Cir. 2001) (noting "a sentence to a term of imprisonment begins on the date the defendant is received into custody"). Dixon was sentenced on his federal case in April 2025—months after he had completed his state

11

sentences. Thus, Dixon has no state sentence that can be served concurrently with his federal sentence. And a defendant cannot use the *nunc pro tunc* designation as an end run around the rules prohibiting double credit. *See DeJesus v. Zenk*, 374 F. App'x 245, 247 (3d Cir. 2010) (finding no error in BOP's decision that defendant was not eligible for *nun pro tunc* designation prior to the date of his federal sentence where it was undisputed that defendant's time prior to imposition of federal sentence "was credited to his state sentence.").

In short, Dixon has received state credit for all periods of official detention before his federal sentence commenced. Moreover, the sentencing court in his federal case expressly accounted for the fact that Dixon would not receive credit for time served in state custody and so departed significantly downward from Dixon's guideline range of 188–235 months when imposing 38-month federal sentence. Accordingly, Dixon's sentence computation complies with the law and BOP policy and is consistent with the understanding of the sentencing court. (*Dixon, et al.,* Sentencing Hr'g Tr., ECF No. 174, p. 40).

## Conclusion

For the reasons stated above, Dixon's petition should be dismissed or denied.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

*s/Sarah Alsaden*
Sarah Alsaden
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9146
sarah.alsaden@usdoj.gov

Dated: August 21, 2025

## Certificate of Service

I certify that on August 21, 2025, I electronically filed the Response to Petition for Writ of Habeas Corpus and Brief in Support with the Clerk of the Court using the ECF system, and that an employee of the U.S. Attorney's Office mailed a copy via the United States Postal Service to the following non-ECF participant:

>Frederick Lamar Dixon, #26592-039
>FCI Milan
>Federal Correctional Institution
>P.O. Box 1000
>Milan, MI  48160

>/s/ Sarah Alsaden
>Assistant United States Attorney